UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| D&H THERAPY ASSOCIATES, LLC and ROBIN DOLAN, Plaintiffs, | : | CA 08 005 S |
| v. | : | C.A. No. 08- |
| BOSTON MUTUAL LIFE INSURANCE COMPANY, Defendant. | : | |

## COMPLAINT

### Nature of the Action

1. Plaintiffs bring this action to enforce their rights under an employee benefit plan under 29 U.S.C. § 1132 of the Employee Retirement Income Security Act ("ERISA") and for damages for breach of its insurance contract with Defendant (and as an intended beneficiary thereunder) and, pursuant to *Rhode Island General Laws* § 9-1-33, for damages for Defendant's unlawful cessation of disability benefits paid to Plaintiff and policy beneficiary, Robin Dolan, due to Defendant's arbitrary and unsupported decision to change company policy by treating phantom tax allocated income as "earnings" for purposes of calculating eligibility to benefits pursuant to the insurance contract. Plaintiffs also seek by this action a declaration that Defendant is not entitled to repayment of any amounts previously paid by it to Ms. Dolan relating to her disability.

### The Parties

2. Plaintiff D&H Therapy Associates, LLC ("D&H") is a limited liability company that is duly incorporated under Rhode Island law, and the assignee of the disability insurance policy at issue in this action. D&H is a successor to D&H Therapy Associates, which was a

partnership founded pursuant to Rhode Island law. In 2004, the D&H partnership was converted to a limited liability company pursuant to Rhode Island law.

3. Plaintiff Robin Dolan ("Ms. Dolan") has, at all relevant times, been a principal of D&H and has, at all relevant times, been an intended beneficiary of the insurance contract between D&H and Defendant and at issue in this case.

4. Defendant, Boston Mutual Life Insurance Company ("Boston Mutual" or "Defendant"), is an insurance company that does business within Rhode Island.

**Facts Common to All Counts**

5. In June of 2000, D&H's predecessor purchased the disability insurance policy numbered G-52423 that is at issue in this case (the "Policy"). The intention of D&H and its principals in purchasing the Policy, as specifically expressed to Defendant's agents, was to protect their W-2 or salary income.

6. The Policy defines disability as follows:

**"WHAT DOES DISABILITY MEAN?**

**Disability means that due to sickness or injury:**

- **You are not able to perform some or all of the material and substantial duties of your regular occupation and you have at least a 20% loss in your pre-disability earnings.**

**OR**

- **While you are not able to perform some or all of the material and substantial duties of your regular occupation, you are working in any occupation and have at least a 20% loss in your pre-disability earnings.**

The definition of disability also provides:

- Your disability begins while you are covered under the plan;
- That the loss of a professional occupational license or certification does not, by itself, mean you are disabled;
- Any occupation will include your regular occupation.

**Material and substantial duties are the duties that:**

- **Are normally required for the performance of the occupation;**

**AND**

- **Cannot be reasonably omitted or changed."**

7. The Policy also contained the following provisions relating to the cessation of disability payments:

**"WHEN WILL OUR PAYMENTS TO YOU STOP?**

**We will stop payments on the earliest of the following dates:**

- **The date you are no longer disabled according to this plan;**
- **The date you reach the end of the maximum payment duration;**
- **The date your current earnings exceed 80% of your pre-disability earnings. If your current earnings fluctuate, we may average your current earnings over a three (3) consecutive month period of time instead of stopping your payment on the date your current earnings reach 80% of your pre-disability earnings;**
- **The date you die;**
- **The date you fail to provide proof of continuing disability;**
- **The date you refuse to participate in an approved rehabilitation program;**
- **When you are able to increase your current earnings by increasing the number of hours you work or the number of duties you perform in your regular occupation but you do not do so."**

8. Finally, the term "earnings" was defined in the Policy as "any income you earn or receive from any form of employment."

9. At the time leading up to D&H's predecessor purchasing the policy, its principals repeatedly expressed to Boston Mutual's agent, Benefit Services Incorporated, the importance that the W-2 income of its principals be protected. In the course of these conversations, PRN's representatives were repeatedly assured that "earnings," and, more specifically, the above-quoted provision referring to "any income you receive from any form of employment" referred only to W-2 earnings, including any "bonuses" the employee might receive as an employee.

10. During 2001, Plaintiff Robin Dolan, one of the covered employees under the Policy, suffered an event that required her to substantially reduce her hours. In accordance with the specific terms of the Policy, Ms. Dolan qualified for disability benefits, and Defendant, Boston Mutual, began to pay monthly benefits.

11. In April of 2006, however, Defendant discontinued Ms. Dolan's disability payments and -- in an abrupt reverse of its outstanding policies -- claimed that the definition of "earnings" in the Policy, for purposes of determining eligibility for benefits, would now include all payments, from any source, including "phantom" shareholder allocations, even when such allocations were for tax purposes only and did not result in an actual distribution to the insured.

12. As a result of this abrupt and unprecedented change in policy, Defendant has not only ceased payments to Ms. Dolan, but has stated, through its agent, Disability RMS, its contention that Ms. Dolan is liable to it for overpayments made to her by Defendant.

13. As the definition of earnings contained within the Policy quite clearly does not include partnership or shareholder pass through allocations, the denial was in breach of the Policy's terms.

14. Plaintiffs have exhausted all administrative remedies available to it by taking two appeals of Defendant's denial of benefits before Defendant's third-party administrator.

15. Defendant's actions in discontinuing benefits to Ms. Dolan and demanding repayment from her of payments properly made by it pursuant to the insurance contract are unlawful and made in bad faith.

**Count I**
**Breach of Contract**

16. Plaintiffs repeat and incorporate Paragraphs 1 through 15 of the Complaint as if set forth in full herein.

17. By its above-described conduct, Defendant is in material breach of its contract under the Policy for, including but not necessarily limited to, refusing to pay Ms. Dolan her agreed to benefits.

**Count II**
**Bad Faith**

18. Plaintiffs repeat and incorporate Paragraphs 1 through 17 of the Complaint as if set forth in full herein.

19. Plaintiffs' denial of confirmed benefits and demand for reimbursement of payment of benefits by Defendant are made by Defendant in the absence of an objectively reasonable basis.

20. Defendant knew of and/or acted in reckless disregard of the absence of an objectively reasonable basis to deny Plaintiff's claim.

21. By denying Plaintiff's claim, Defendant has acted in bad faith as defined in *Rhode Island General Laws* § 9-1-33.

**Count III**
**Declaratory Relief**

22. Plaintiffs repeat and incorporate Paragraphs 1 through 21 of the Complaint as if set forth in full herein.

23. Plaintiff's are interested under the Policy as an insured and a beneficiary, respectively, and Plaintiffs' legal rights, status, or other legal relations are affected by the Policy.

**Count IV**
**Recovery of Plan Benefits Pursuant to 29 U.S.C. § 1132**

24. Plaintiffs repeat and incorporate Paragraphs 1 through 23 of the Complaint as if set forth in full herein.

25. Plaintiff's disability insurance plan is an Employee Benefit Plan as defined by ERISA.

26. Plaintiffs are plan participants and/or fiduciaries of the plan as defined in ERISA.

27. Defendant, by its above-described conduct, has violated the terms of the plan, as set out in the disability insurance contract, by denying Ms. Dolan her benefits in violation of the insurance contract.

28. Plaintiffs have suffered great damages as a result of Defendant's breaches of the contract.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court grant it the following relief in implementation of the declaratory relief sought in Count III:

(a) Award Plaintiff Ms. Dolan compensatory damages in an amount to be determined at trial;

(b) Award Plaintiff Ms. Dolan punitive damages for its above-described egregious conduct and pursuant to *Rhode Island General Laws* § 9-1-33;

(c) Pursuant to *Rhode Island General Laws* § 9-30-2, declare that the Policy obligates Defendant to resume Policy disability benefits to Plaintiff Ms. Dolan;

(d) Pursuant to *Rhode Island General Laws* § 9-30-2, declare that Plaintiffs have no obligation to reimburse Defendant for any alleged overpayment(s);

(e) Order Defendant to resume making disability payments to Plaintiff Ms. Dolan; and

(f) Grant such other and further relief as this Honorable Court shall deem meet and just.

D&H THERAPY ASSOCIATES, LLC
and ROBIN DOLAN

By Their Attorneys,

Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: January 3, 2008

G:\csb\D&HTherapy\pldgs\complaint.doc