UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| D&H THERAPY ASSOCIATES, LLC and ROBIN DOLAN, Plaintiffs, | : | |
| v. | : | C.A. No. 08-005S |
| BOSTON MUTUAL LIFE INSURANCE COMPANY, Defendant. | : | |

**RULE 16 CONFERENCE STATEMENT**

Plaintiffs, D&H Therapy Associates, LLC ("D&H") and Robin Dolan ("Ms. Dolan") (collectively, the "Plaintiffs"), respectfully submit this Statement in connection with the Rule 16 Conference scheduled in this matter for April 29, 2008.

I. Factual Background

During 2001, Ms. Dolan, one of the covered employees under the disability insurance policy numbered G-52423 and at issue in this case (the "Policy"), suffered a serious personal injury that required her to substantially reduce her hours. In accordance with the specific terms of the Policy, which required benefits to be paid in certain specific circumstances where the insured suffered a loss of at least 20% of her pre-disability earnings, Ms. Dolan qualified for disability benefits, and the Defendant, Boston Mutual Life Insurance Company ("Defendant" or "Boston Mutual"), began to pay monthly benefits. At all relevant times, Ms. Dolan disclosed that she had an ownership interest in D&H.[1]

[1] For purposes of brevity, Plaintiffs will refer to D&H and its related predecessor entities as "D&H," as the history of partnership and corporate forms of the related entities is not relevant to the issues set forth herein.

In April of 2006, Disability Reinsurance Management Services, Inc. ("Disability RMS"), the third-party administrator for Boston Mutual, informed Ms. Dolan and D&H that it would be discontinuing Ms. Dolan's disability payments pending the outcome of its investigation of certain personal financial information pertaining to Ms. Dolan, most notably her ownership interest in D&H and certain related entities.

The documentary information furnished to Disability RMS -- even when she first made her claim in 2001 -- clearly demonstrated that Ms. Dolan was not only an employee of D&H, but was a shareholder or part owner of it. Indeed, she specifically disclosed this fact to Defendant and its agents on numerous occasions. The tax returns furnished by Disability RMS for the applicable years show that Ms. Dolan was credited with certain "paper" profits of D&H and another entity for tax purposes. None of these amounts were actually received by Ms. Dolan, and the amounts were unrelated to the actual hours worked or services performed in connection with her job duties. Indeed, as a shareholder of D&H (or part-owner of its predecessor entities), she would have been entitled to these profits whether she worked full time or whether she was wholly unable to work (as is the case now). In short, the paper profits, calculated for tax purposes only, related not to her "employment" at D&H, but solely to her ownership of certain shares in D&H.

Disability RMS, Defendant's Third-Party Administrator, found that these paper profits should have been counted as "earnings" and ruled that her benefits should be discontinued. It further concluded that Ms. Dolan's disability benefits would have to be reimbursed to Defendant by Ms. Dolan in the amount of $145,958.32. Plaintiffs appealed this decision in accordance with Disability RMS's internal procedures, but each of her appeals was denied. Unfortunately, each of the Appeals was decided well outside of the timetables set out in Defendant's internal

procedures. Disability RMS's reversal of position with regard to Ms. Dolan's benefits would result in a savings to Defendant of more than $600,000. Ms. Dolan's disability has worsened and she is presently unable to work.

## II. Argument

Pursuant to the Policy, a claimant's eligibility for disability benefits requires a loss of at least 20% in the claimant's pre-disability "earnings." For purposes of determining eligibility for benefits, Disability RMS was bound by the Policy provision defining "earnings" for that purpose as "any income you earn or receive from any form of employment."

It is well-established that pursuant to applicable case law, revenue rulings and IRS Regulations and Rules, S corporation pass-through income is not treated by accountants or the IRS as employment income or earnings. *See, e.g., Durando v. U.S.*, 70 F.2d 548 (9th Cir. 1995). *See also* IRS Pub. No. 560, p. 14 (stating that no authority exists indicating that S corporation pass through income also constitutes net earnings from self-employment). Nor does the Social Security Administration consider pass through earnings for the purpose of determining eligibility for disability benefits. Accordingly, in keeping with generally accepted accounting principles (as well as the definition of "earnings" contained within the policy), the S corporation pass-through "income" (none of which was actually received by Ms. Dolan) was not "received" from "employment" and should not be considered for purposes of determining her eligibility for disability payments.

The plain meaning of the terms in the policy's definition of earnings also favors an interpretation that Ms. Dolan's phantom allocations for tax purposes were not "earnings" for the purpose of determining whether her benefits should cease. For example, "employment" is defined by *Black's Law Dictionary* as:

> Act of employing or state of being employed; that which engages or occupies; that which consumes time or attention; also an occupation, profession, trade, post of business.

This definition stands in stark contrast to phantom shareholder profits, which would be attributed to Ms. Dolan, whether she remained "employed" or not. Accordingly, stockholder tax allocations are not "received from any form of employment," and Defendant's determination was incorrect.

Further, D&H's predecessor entity specifically was assured at the time of the purchase of the Policy that "earnings" *only* included W-2 earnings, so that even if Defendant's interpretation was correct, the contract would be subject to reformation. Accordingly, the Company's change in policy in this regard was arbitrary and capricious.

Finally, although Plaintiff's claim that the third-party administrator's policy determinations are entitled to deference, there is a well established exception to this rule where a third party administrator -- as here -- does not follow the timetables set out in its own procedures. In such cases, the Court's review will be *de novo*, and the Court is free to apply general rules of contract interpretation. *See, e.g., Gilbertson v. AlliedSignal, Inc.*, 328 F.3d 625 (10th Cir. 2003).

III. Elements

In order for the Plaintiffs to prevail on their claim of breach of contract, they must prove that there was a contract in place between the parties, that the Defendant has failed to perform what it promised to do, and that the Plaintiffs suffered damages. *Model Civil Jury Instructions for Rhode Island*, § 3001.

A claim of bad faith against an insurer, pursuant to Rhode Island law, requires a plaintiff to prove "behavior more than simple negligence" and a plaintiff must show that the insurer's actions were "highly unreasonable, reckless or in 'bad faith.'" *Voccio v. Reliance Insurance Companies*, 703 F.2d 1 (1st Cir. 1983) (applying Rhode Island law).

In order for Plaintiffs to prevail on their claim under 29 U.S.C. § 1132, Plaintiff must demonstrate that she is due benefits under the plan that were denied to her by Defendant. 29 U.S.C. § 1132 (a).

D&H THERAPY ASSOCIATES, LLC
and ROBIN DOLAN

By Their Attorneys,

/s/ Charles S. Beal

Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: April 25, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April, 2008, a true copy of the within was sent, via electronic transmission through the Court's Electronic Case Filing system, to the following:

Brooks R. Magratten, Esq.
Catherine A. Shaghalian, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

/s/ Charles S. Beal

G:\csb\D&HTherapy\pldgs\rule16conferencestatement.doc