UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| D&H THERAPY ASSOCIATES, LLC and ROBIN DOLAN, | : | |
| Plaintiffs, | : | |
| | : | C.A. No. 08-005S |
| v. | : | |
| BOSTON MUTUAL LIFE INSURANCE COMPANY, | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Plaintiffs D&H Therapy Associates LLC and Robin Dolan (the "Plaintiffs") respectfully submit this memorandum of law in support of their Motion to Amend the Complaint. The purpose of the proposed amendment is to add a claim for fraud in the inducement, and to incorporate a document recently uncovered by Plaintiffs that strongly supports Plaintiffs claims that it was given repeated assurances by Defendant Boston Mutual Life Insurance Company ("Defendant"), even before the contract was executed, that earnings would be defined under the contract as W-2 earnings and that income from other sources, such as investments or phantom stockholder income would not be considered for the purpose of determining eligibility for disability benefits..

Plaintiffs have asserted in this action that they were assured by Defendant and its agents that "earnings" would be defined as W-2 earnings for purposes of the policy, and that for the purpose of determining eligibility for benefits, other types of income would not be considered. After acting in accordance with that definition for several years by paying Ms. Dolan disability benefits, Defendant abruptly reversed its policy by announcing that it would be considering all income received by Ms. Dolan, including

phantom shareholder income and demanding that Ms. Dolan repay it nearly $150,000 in benefits. Defendant has denied throughout this process that it gave the Plaintiff any such assurances that "earnings" would be defined as W-2 income.

In the process of preparing for a mediation scheduled in this matter, Plaintiff uncovered a specific written proposal that was furnished by Defendant to Plaintiff shortly before it purchased the insurance here at issue that precisely defines earnings in the manner in which Plaintiffs have contended that it should be read. The Proposal, written on Defendant's letterhead and dated 2000, defines Earnings as follows:

> **Definition of Earnings** Basic Annual Earnings shall mean the Insured Person's earnings for the prior calendar year ***as reported by the Group Policyholder on form W-2.*** If the person has earnings for less than a calendar year, Basic Annual Earnings shall be determined by averaging the monthly earnings for each month worked and annualizing the result.

(Emphasis added.) (A copy of this written proposal is annexed to the proposed Amended Complaint as Exhibit 1.)[1]

As described in the proposed Amended Complaint, this document was furnished to the Plaintiff by Defendant after Plaintiffs provided a copy of their existing Group Disability Policy with Guarantee Life Insurance Company to Defendant, which explicitly defined "earnings" as W-2 earnings and informed Defendant that they would not shift carriers unless Boson Mutual's definition of earnings was the same. In reliance on Defendant's statements (in the written proposal and elsewhere) that "earnings" would be defined as W-2 earnings, Plaintiff gave up the Guarantee Life policy and signed on with Boston Mutual.

[1] Remarkably, this proposal was not contained within the voluminous documents produced to Plaintiffs and represented to be Defendant's entire file relating to this claim.

It is Plaintiffs' contention that this newly uncovered document strongly supports Plaintiffs' claim of bad faith, as well its proposed claim for fraud in the inducement. Plaintiffs should be allowed to plead in the alternative that if Defendant is correct in its assertion in this case that earnings should include investment and other income, it is apparent that they misled Plaintiffs into entering into the insurance contract by including what they are now claiming to be a false definition of "earnings" in their above-referenced proposal.

**Argument**

ERISA was not enacted to immunize fraudulent conduct. Contrary to the broad and expansive suggestions made by Defendant that ERISA preempts any and all state law claims even tangentially related to an ERISA plan, federal courts have routinely found that fraud in the inducement claims are not preempted by ERISA in a wide variety of circumstances. *See, e.g., Geller v. County Line Auto Sales*, 86 F.3d 18 (2d Cir. 1996) (holding that state law fraud in the inducement claim was not preempted by ERISA, as the state law claim did not in any way compromise Congress' purpose in enacting ERISA and, indeed, the state law fraud claim furthered ERISA's goal of "insuring the honest administration of financially sound plans."); *Smith v. Children's Hospital,* 84 F.3d 152 (5th Cir. 1996) (finding that claim for fraudulent inducement based on allegations that false statements were made by defendant that induced the plaintiff to give up existing insurance policy and sign onto plan was not preempted by ERISA); *Hubbard v. Blue Cross & Blue Shield*, 42 F.3d 942 (5TH Cir. 1995) (ruling that state law fraudulent inducement claim based on false advertising that allegedly induced plaintiff to enter into insurance contract/plan was not preempted by ERISA law.); *Perkins v. Time Ins. Co*., 898

F.2d 470 (5th Cir. 1990) (holding that ERISA preemption did not extend to preempt fraud in the inducement claim based on allegations that Plaintiff was fraudulently induced to drop an existing insurance policy to enter into a new insurance policy/plan.); *Davies v. Centennial Ins. Co.*, 128 F.3d 934 (6th Cir. 1997) (holding that fraud in the inducement claim relating to insurance policy was not preempted by ERISA, as preemption would create an incentive for unscrupulous behavior); *Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765 (7th Cir. 2002) (finding that ERISA did not preempt fraud claim and stating that "[a] state law claim is not expressly preempted under § 1144(a) merely because it requires a cursory examination of ERISA plan provisions."); *Wilson v. Zoellner*, 114 F.3d 713 (8th Cir. 1997) (holding that claim for negligent misrepresentation as to the scope of insurance coverage was not preempted by ERISA.); *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267 (11th Cir. 2005) (holding that claims of fraud in the sale of life insurance policies were not preempted by ERISA law); *Morstein v. National Insurance Services, Inc.*, 93 F.3d 715 (11th Cir. 1996) (*en banc*) (opining that state law claim that insured was induced to give up insurance policy and enter into a plan was not sufficiently "related to" plan to trigger ERISA preemption.).

*Cotton v. Massachusetts Mutual Life Ins. Co.*, 402 F.3d 1267 (11th Cir. 2005), is instructive. In *Cotton*, employees covered by an ERISA plan brought claims under ERISA, as well as state law claims for misrepresentation, fraud and promissory estoppel against an insurance company. The plaintiffs alleged that in reliance on written projections and statements made by the insurance company defendant (that, as here, the insurance company later claimed to be incorrect), the plaintiffs amended the plan and took out loans against their life insurance policies to their detriment. In its opinion, the

court summarized the law of the various circuits, and cited with approval *Perkins v. Time Insurance Co.*, 898 F.2d 470 (5th Cir):

> A claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage, "relates to" that plan only indirectly. A state law claim of that genre, which does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such, is not preempted by ERISA.

*Id.* at 1284. The court went on to hold that the claims were not preempted because when the insurance company and its agent made its allegedly false statements, it was not acting in a fiduciary capacity and the state law claims, if proven, would have only an indirect effect on the plan.

Here, unlike in the *Carasquillo* case relied on by Defendant, the Plaintiffs are not seeking benefits by way of the fraudulent inducement claim. The Amended Complaint alleges that Plaintiff had insurance with another insurance company protecting their W-2 income. Plaintiffs allege that as a result of Defendant's fraudulent proposal (attached as Exhibit 1 to the proposed Amended Complaint) Defendant induced Plaintiffs to terminate the other policy. Accordingly, with regard to this specific state law claim, they are not suing for the benefits that they would have received under the plan, but the benefits that they lost under the other policy that they were induced to terminate. *See also Atchison v. Woodmen of the World Insurance Society, C.F.*, 982 F. Supp. 835, 841 (S.D. Ala. 1997) (holding that claim brought by employees for fraudulent inducement based on allegation that defendant insurance company's false statements regarding insurance policy caused them to change policies was not preempted by ERISA.).

The reasoning set out in the above cases is consistent with that of the First Circuit Court of Appeals in *Nash v. Trustees of Boston University*, 946 F.2d 960 (1st Cir. 1991).

In *Nash*, the Court directly addressed the issue of whether a contractual defense of fraud in the inducement was preempted by ERISA. The Court expressly found that "[t]he legislative purpose and public policy activating ERISA would be advanced by accommodating the affirmative defense of fraud in the inducement with the developing reserve of federal common law," in that "complete preemption" in disregard of such basic contract principles would create a disincentive to behave reasonably, as such fraud would otherwise be immunized by ERISA preemption. *Id.* So too here. It stands to reason that if the First Circuit recognized the appropriateness of fraud in the inducement as an affirmative defense, it should also recognize it as an affirmative claim where – as here – it will have, at best, an incidental effect on the plan.

Finally, it is respectfully submitted that weighty and complex issues such as allegations of fraud against an insurance company and its agents and ERISA preemption are most appropriately examined by the Court in the context of a dispositive motion based on full briefing and after the record has been developed – and not in the context of a motion to amend. Indeed, Judge Smith has already granted Plaintiffs discovery on Plaintiff's state law claims. It would be wholly premature to rule on these complex issues of law on less than full briefing and in the context of a Motion to Amend.

**Conclusion**

For the foregoing reasons, it is respectfully requested that this Court enter an order granting Plaintiffs leave to file and serve the Amended Complaint annexed to the Motion for Leave to Amend as Exhibit A and granting such further relief as it deems just and appropriate.

D&H THERAPY, LLC and
ROBIN DOLAN,

By their Attorneys,

/s/ Charles S. Beal
Charles S. Beal (#5559)
Beal Law, LLC
55 Pine Street, Suite 400
Providence, Rhode Island 02903
Tel. (401) 270-6200
Fax (401) 490-0117

July 16, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of June, 2008, a true copy of the within was sent, via electronic service, to the following:

Brooks R. Magratten, Esq.
Timothy Bliss, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

/s/ Charles S. Beal
Charles S. Beal