UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| D&H THERAPY ASSOCIATES, LLC and ROBIN DOLAN, Plaintiffs, | : | |
| v. | : | C.A. No. 08-005S |
| BOSTON MUTUAL LIFE INSURANCE COMPANY, Defendant. | : | |

**AMENDED COMPLAINT**

**Nature of the Action**

1. Plaintiffs bring this action to enforce their rights under an employee benefit plan under 29 U.S.C. § 1132 of the Employee Retirement Income Security Act ("ERISA"), for damages for breach of their long-term disability insurance contract with Defendant (and as an intended beneficiary thereunder) and, pursuant to *Rhode Island General Laws* § 9-1-33, for damages for Defendant's bad-faith cessation of benefits paid to a policy beneficiary, Robin Dolan. Ms. Dolan is disabled, unable to work and has been denied benefits owed by Defendant that would total more than six hundred thousand dollars over the course of the period of her eligibility.

2. In 2006, after paying Ms. Dolan disability benefits for five years, Defendant arbitrarily changed its company policy by beginning to treat phantom tax allocated income as "earnings" for purposes of calculating eligibility to benefits pursuant to the insurance contract. As described in greater detail below, Defendant's change in policy regarding the "earnings" that would be considered for the purposes of determining eligibility for disability benefits directly contradicts the written statements that it made to Plaintiffs defining "earnings" under the policy, and is therefore made in bad faith. Plaintiffs also seek by this action a declaration that Defendant is not entitled to repayment of any amounts previously paid by it to Ms. Dolan relating to her disability.

**The Parties**

3. Plaintiff D&H Therapy Associates, LLC ("D&H") is a limited liability company that is duly incorporated under Rhode Island law, and the assignee of the disability insurance policy at issue in this action. D&H is a successor to D&H Therapy Associates, which was a partnership founded pursuant to Rhode Island law, which had previously been known as "Professional Rehabilitation Network." In 2004, the D&H partnership was converted to a limited liability company. At each change of the corporate structure of D&H and its predecessor entities, the insurance policy at issue in this litigation was properly assigned to the successor entity with the full knowledge and consent of Defendant.

4. Plaintiff Robin Dolan ("Ms. Dolan") has, at all relevant times, been a principal of D&H and its predecessor entities[1] and has, at all relevant times, been an intended beneficiary of the long-term disability insurance contract between D&H and Defendant and at issue in this case.

5. Defendant, Boston Mutual Life Insurance Company ("Boston Mutual" or "Defendant"), is an insurance company that does business within Rhode Island.

**Facts Common to All Counts**

6. In June of 2000, D&H's predecessor purchased the disability insurance policy numbered G-52423 that is at issue in this case (the "Policy"). The intention of D&H and its principals in purchasing the Policy, as specifically expressed to Defendant and its agents, was to protect their W-2 or salary income in the event of disability.

[1] For purposes of brevity, Plaintiff will refer to D&H and its predecessor entities, collectively, as "D&H."

7. The Policy defines disability as follows:

**"WHAT DOES DISABILITY MEAN?**

**Disability means that due to sickness or injury:**

- **You are not able to perform some or all of the material and substantial duties of your regular occupation and you have at least a 20% loss in your pre-disability earnings.**

**OR**

- **While you are not able to perform some or all of the material and substantial duties of your regular occupation, you are working in any occupation and have at least a 20% loss in your pre-disability earnings.**

The definition of disability also provides:

- Your disability begins while you are covered under the plan;
- That the loss of a professional occupational license or certification does not, by itself, mean you are disabled;
- Any occupation will include your regular occupation.

**Material and substantial duties are the duties that:**

- **Are normally required for the performance of the occupation;**

**AND**

- **Cannot be reasonably omitted or changed."**

8. The Policy also contained the following provisions relating to the cessation of disability payments:

**"WHEN WILL OUR PAYMENTS TO YOU STOP?**

**We will stop payments on the earliest of the following dates:**

- **The date you are no longer disabled according to this plan;**
- **The date you reach the end of the maximum payment duration;**
- **The date your current earnings exceed 80% of your pre-disability earnings. If your current earnings fluctuate, we may average your current earnings over a three (3) consecutive month period of time instead of stopping your payment on the date your current earnings reach 80% of your pre-disability earnings;**
- **The date you die;**

- **The date you fail to provide proof of continuing disability;**
- **The date you refuse to participate in an approved rehabilitation program;**
- **When you are able to increase your current earnings by increasing the number of hours you work or the number of duties you perform in your regular occupation but you do not do so."**

9. Finally, the term "earnings" was defined in the Policy as "any income you earn or receive from any form of employment."

10. At the time leading up to D&H's predecessor purchasing the Policy, its principals repeatedly expressed to Boston Mutual's agent, Benefit Services Incorporated, the importance that the W-2 income of its principals be protected. At that time, D&H's predecessor had a disability insurance policy with Guarantee Life Insurance Company (the "Guarantee Life Policy") that explicitly provided that earnings would be defined as "the Insured Employee's Annual Salary divided by twelve." In turn, the policy defined "Annual Salary" as "the Insured Employee's earnings from the Employer, as reported on Form W-2 for the twelve month period." The Guarantee Life policy further made clear that only such W-2 Earnings, and no other sources of income, would be considered in determining eligibility for disability benefits.

11. Accordingly, in the course of conversations with Defendant's agents, PRN's principals made explicitly clear to Defendant's agents that they were not interested in changing carriers unless their W-2 earnings would be protected, as they were under the Guarantee Life Policy. In connection with these discussions, In the course of these conversations, PRN's representatives furnished a copy of the Guaranty Life Policy and informed Defendant that it would only switch policies if the W-2 income would be protected and earnings would be defined as it was in the Guarantee Life Policy.

12. In response to the concern's raised by D&H's predecessors, Defendant prepared a written proposal that made clear that the Boston Mutual Policy would also protect the insureds' W-2 Income (the "Proposal"). The Proposal, submitted to D&H's predecessor in 2000, only days before it signed on with Boston Mutual, specifically described what would be considered "earnings" under the policy in the event that D&H's predecessor purchased the long-term disability benefits policy from Defendant:

> Definition of Earnings Basic Annual Earnings shall mean the Insured Person's earnings for the prior calendar year ***as reported by the Group Policyholder on form W-2.*** If the person has earnings for less than a calendar year, Basic Annual Earnings shall be determined by averaging the monthly earnings for each month worked and annualizing the result.

(Emphasis added.) (A copy of the Proposal is annexed hereto as Exhibit A.)

13. Based on the above-quoted definition of earnings included in the Proposal and the repeated statements made by Defendant's agents that the insured's W-2 income "would be protected," D&H's predecessor entity gave up the Guarantee Life Policy and purchased the group long-term disability insurance policy at issue in this case.

14. During 2001, Plaintiff Robin Dolan, one of the covered employees under the Policy, suffered an event that required her to substantially reduce her work hours. In accordance with the specific terms of the Policy, Ms. Dolan qualified for disability benefits, and Defendant, Boston Mutual, began to pay Ms. Dolan monthly benefits.

15. In April of 2006, however, after five years of payments, Defendant discontinued Ms. Dolan's disability payments and -- in an abrupt reversal of its corporate policies -- claimed that the definition of "earnings" in the Policy, for purposes of determining eligibility for benefits, would now include all payments, from any source, including "phantom" shareholder allocations, even when such allocations were for tax purposes only and did not result in an actual distribution

to the insured. This abrupt reversal of policy was adopted despite the clear and unambiguous statement previously made in writing to D&H when it was considering purchasing the policy that earnings "shall mean the Insured Person's earnings for the prior calendar year as reported by the Group Policyholder on form W-2."

16. As a result of this abrupt and unprecedented change in policy, Defendant has not only ceased payments to Ms. Dolan, but has stated, through its agent, Disability RMS, its contention that Ms. Dolan is liable to it for overpayments made to her by Defendant.

17. As the definition of earnings contained within the Policy quite clearly does not include partnership or shareholder pass through allocations, the denial was in breach of the Policy's terms.

18. Plaintiffs have exhausted all administrative remedies available to it by taking two appeals of Defendant's denial of benefits before Defendant's third-party administrator, Disability RMS.

19. Defendant's actions in discontinuing benefits to Ms. Dolan and demanding repayment from her of payments properly made by it pursuant to the insurance contract are unlawful, contradict the language set out in Defendant's own proposal and are made in bad faith.

20. In addition, Defendant's actions in furnishing D&H's predecessor entity with the fraudulent Proposal caused it to give up an insurance policy with another carrier (the Guarantee Life Policy) which clearly would have provided coverage for Ms. Dolan's losses.

**Count I**
**Breach of Contract**

21. Plaintiffs repeat and incorporate Paragraphs 1 through 20 of the Amended Complaint as if set forth in full herein.

22. By its above-described conduct, Defendant is in material breach of its contract under the Policy for, including but not necessarily limited to, refusing to pay Ms. Dolan her agreed to benefits. Plaintiffs have been greatly damaged as a result.

**Count II**
**Bad Faith**

23. Plaintiffs repeat and incorporate Paragraphs 1 through 22 of the Amended Complaint as if set forth in full herein.

24. Plaintiffs' denial of confirmed benefits and demand for reimbursement of payment of benefits by Defendant are made by Defendant in the absence of an objectively reasonable basis, especially in light of its previous written pronouncements regarding the definition of "earnings" for purposes of the Policy.

25. Defendant knew of and/or acted in reckless disregard of the absence of an objectively reasonable basis to deny Plaintiff's claim.

26. By denying Plaintiff's claim, Defendant has acted in bad faith as defined in *Rhode Island General Laws* § 9-1-33.

**Count III**
**Declaratory Relief**

27. Plaintiffs repeat and incorporate Paragraphs 1 through 26 of the Amended Complaint as if set forth in full herein.

28. Plaintiff's are interested under the Policy as an insured and a beneficiary, respectively, and Plaintiffs' legal rights, status, or other legal relations are affected by the Policy.

**Count IV**
**Recovery of Plan Benefits Pursuant to 29 U.S.C. § 1132**

29. Plaintiffs repeat and incorporate Paragraphs 1 through 28 of the Amended Complaint as if set forth in full herein.

30. Plaintiff's disability insurance plan is an Employee Benefit Plan as defined by ERISA.

31. Plaintiffs are plan participants and/or fiduciaries of the plan as defined in ERISA.

32. Defendant, by its above-described conduct, has violated the terms of the plan, as set out in the disability insurance contract, by denying Ms. Dolan benefits due her in violation of the insurance contract.

33. Plaintiffs have suffered great damages as a result of Defendant's breaches of the contract.

**COUNT V**
**Fraud in the Inducement**

34. Plaintiffs repeat and incorporate paragraphs 1 through 33 of the Amended Complaint as if set forth in full herein.

35. In connection with selling the Plaintiffs the long term disability policy here at issue, Defendant and its agents informed Plaintiffs that the coverage that it would receive was identical to what it had under the Guarantee Life Policy in that "earnings" would be defined as W-2 earnings, and would not include other investment or similar income.

36. These statements were made both orally and in writing, as set out in the Proposal annexed hereto as Exhibit A.

37. Plaintiffs relied upon these statements, justifiably and to their detriment. As a result of their reasonable reliance on Defendant's false statements, they gave up a policy and its resultant benefits that clearly would have provided coverage for Ms. Dolan's lost earnings.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court grant it the following relief:

(a) Award Plaintiff Ms. Dolan compensatory damages in an amount to be determined at trial;

(b) Award Plaintiff Ms. Dolan punitive damages for its above-described egregious conduct and pursuant to *Rhode Island General Laws* § 9-1-33;

(c) Pursuant to *Rhode Island General Laws* § 9-30-2, declare that the Policy obligates Defendant to resume Policy disability benefits to Plaintiff Ms. Dolan;

(d) Pursuant to *Rhode Island General Laws* § 9-30-2, declare that Plaintiffs have no obligation to reimburse Defendant for any alleged overpayment(s);

(e) Order Defendant to resume making disability payments to Plaintiff Ms. Dolan; and

(f) Grant such other and further relief as this Honorable Court shall deem meet and just.

D&H THERAPY ASSOCIATES, LLC
and ROBIN DOLAN

By Their Attorneys,

___/s/ Charles S. Beal_____________

Charles S. Beal (#5559)
Beal Law, LLC
55 Pine Street, Suite 400
Providence, Rhode Island 02903
Tel. (401) 270-6200
Fax (401) 490-0117

Date: August ___, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August, 2008, a true copy of the within was sent, via electronic service, to the following:

Brooks R. Magratten, Esq.
Timothy Bliss, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

__/s/ Charles S. Beal___________________
Charles S. Beal