information to the plan beneficiaries regarding the administration of the plan[,]" including "any communications with an attorney that are intended to assist in the administration of the plan." Long Island Lighting, 129 F.3d at 271-72. Consequently, the "fiduciary cannot use the attorney-client privilege to narrow the fiduciary obligation of disclosure owed to the plan beneficiaries." Id. at 272. See also Bland v. Fiatallis N. Am., Inc., 401 F.3d 779, 787 (7th Cir. 2005) (fiduciary exception "is premised on the theory that the attorney-client privilege should not be used as a shield to prevent disclosure of information relevant to an alleged breach of fiduciary duty"). "Other courts have focused instead on the role of the trustee and have endorsed the notion that, 'as a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served.'" Mett, 178 F.3d at 1063 (quoting United States v. Evans, 796 F.2d 264, 266 (9th Cir. 1986)). Under this line of reasoning, "[w]hen an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." Wildbur v. Arco Chem. Co., 974 F.2d 631, 645 (5th Cir. 1992). Accord Washington-Baltimore Newspaper Guild, Local 35 v. Washington Star Co., 543 F. Supp. 906, 909 (D.D.C. 1982). Thus, "[t]he very intention of the communication is to aid the beneficiaries" and the fiduciary "cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege." Washington Star, 543 F. Supp. at 909.

Under either rationale, however, the courts have determined that the fiduciary exception does not defeat the attorney-client privilege with respect to communications between a fiduciary and its attorneys on non-fiduciary matters. See e.g., Long Island Lighting, 129 F.3d at 271 (defendant's "ability to invoke the attorney-client privilege to resist disclosure sought by plan beneficiaries turns on whether or not the communication concerned a matter as to which the [defendant] owed a fiduciary obligation to the beneficiaries"). "In particular, courts have found that, '[w]hen an ERISA trustee seeks legal advice for his own protection, the legal fiction of trustee as representative of the beneficiaries is dispelled' and therefore the fiduciary exception is not applicable." Asuncion v. Metro. Life Ins. Co., No. 06 Civ. 13144 (SAS)(DF), 2007 WL 1834834, at *3 (S.D.N.Y. June 25, 2007) (quoting Black v. Bowes, No. 05 Civ. 108 (GEL), 2006 WL 3771097, at *1 (S.D.N.Y. Dec. 21, 2006)) (additional quotations and citation omitted). Therefore, "where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact." Mett, 178 F.3d at 1064. See also Wildbur, 974 F.2d at 645 (communications between attorney and plan administrator for purpose of defending lawsuit and having nothing to do with plan administration not subject to discovery).

In order to determine whether a particular attorney-client communication concerns a matter of plan administration or seeks legal advice for the fiduciary's own benefit, "courts engage in a fact-specific inquiry, examining both the content and context of the specific communication. Frequently, the key question is whether the communication was

made before or after the final decision to deny benefits." Asuncion, 2007 WL 1834834, at *3 (quotations and citations omitted). That is because after the challenged benefits determination occurs, "there should be little need for administrators to consult counsel regarding a specific benefits determination." Id. (quoting Black, 2006 WL 3771097, at *3).

In the instant case, Jefferson Pilot does not dispute, and this court's *in camera* review has confirmed, that, with one exception, the documents at issue were generated in connection with Jefferson Pilot's processing of Smith's claim for benefits and before a final benefits determination was made.[3] (See Def.'s Mem. (Docket No. 17) at 4-5). Although they demonstrate that claims personnel were seeking advice for the purpose of responding to inquiries and assertions from Smith's attorney, the documents concern issues of plan administration and are entirely unrelated to the defense of a pending legal action or other non-fiduciary matter. Therefore, pursuant to the reasoning of the courts discussed above, the fiduciary exception would defeat Jefferson Pilot's claim of privilege.

### C. Analysis of the Wachtel Decision

The defendant argues that this court should follow Wachtel and find that the fiduciary exception does not apply to insurers like Jefferson Pilot. This court finds that the rationale underlying the court's decision in Wachtel is not persuasive given the status of the law in the First Circuit. Accordingly, as described in the next section, this court

---

[3] The first section of handwritten notes on document no. 12 reflect internal settlement considerations and may be redacted.

declines to adopt the reasoning of the Third Circuit in Wachtel and finds that, consistent with the case law described above, the fiduciary exception applies in this case.

Until recently, courts considering the fiduciary exception in the ERISA context have applied the exception broadly, without regard to the type of fiduciary at issue. See e.g., Wildbur, 974 F.2d at 645 ("When an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator. Therefore, an ERISA fiduciary cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration.") (citation omitted); Lewis v. Unum Corp. Severance Plan, 203 F.R.D. 615, 619 (D. Kan. 2001) ("courts generally have held that although the attorney-client privilege does not apply when an attorney advises a plan fiduciary about the administration of an employee benefit plan, the attorney-client privilege does apply when an attorney advises a plan fiduciary regarding issues that do not involve actual administration of the plan."). However, in Wachtel, the Third Circuit noted that ERISA fiduciaries "come in many shapes and sizes" and it specifically rejected the notion that "the logic underlying the fiduciary exception applies equally to all." Wachtel, 482 F.3d at 234. Although the court recognized that insurer fiduciaries, like plan administrators or ERISA trustees, "owe duties of loyalty and care to their beneficiaries" and "must act in furtherance of their beneficiaries' interests[,]" it determined that "significant differences exist between insurance company fiduciaries . . . and other ERISA fiduciaries to whom the fiduciary exception has been applied." Id. Consequently, the Wachtel court rejected

the application of the fiduciary exemption under both theories generally recognized by the courts — (1) that the real clients obtaining legal advice were really the plan beneficiaries, and (2) that there was a broad duty to disclose imposed on plan fiduciaries by ERISA.

### 1. **Identity of the Real Client**

The Wachtel court concluded that insurers were significantly different than other ERISA fiduciaries "because the plaintiff-beneficiaries are not the 'real' clients obtaining legal representation" in the case of an insurance company. Id. This holding is premised on the concept that the interests of the insurer and those of the plan beneficiaries are sufficiently divergent to justify withholding attorney-client communications between the insurer and its counsel, even though the communications may have been made while the insurer was acting in its capacity as a fiduciary and concern matters of plan administration. The court looked to four factors in reaching this conclusion. As detailed in the next section, this court does not find these arguments persuasive.

The Wachtel court first explained that, unlike other fiduciaries which are required to hold plan assets in trust under ERISA, insurance companies maintain legal title to the assets. Id. Consequently, although the insurer's fiduciary obligations may place limits on the disposition of those assets, the insurer maintains "a substantial and legitimate interest in the management of its assets – even while it engages in fiduciary acts." Id. Second, the court considered the "structural conflict of interests" that arises when an insurance company "determines eligibility for benefits and pays those benefits from its own