funds[.]" Id. It noted that because of this conflict, the Third Circuit applies a "heightened standard of review" to benefit claims decisions made by an insurer than it uses to review the acts of other ERISA fiduciaries. Id. at 235. The court also determined that such a structural conflict "undermines the argument that when an insurer retains counsel, the real clients being served are the beneficiaries." Id.

The third factor that the Wachtel court identified to support its conclusion that the plan beneficiaries were not the true client was "the additional conflict of handling multiple ERISA benefit plans at once, not to mention other, non-ERISA regulated customers." Id. The court emphasized that an insurer, "[e]ven while acting as a loyal fiduciary to the beneficiaries of one plan, . . . must be mindful of the duties it owes to the beneficiaries of other customer plans, all of whom are paid from the same pool of assets." Id. Again it found that insurers "have interests larger and distinct from those of its beneficiaries." Id. Finally, the court noted that the defendant insurers had paid for legal advice out of their own assets rather than the assets of their beneficiaries, and it found this payment scheme to be "an indicator (albeit only an indicator) that the fiduciary is the client, not a representative." Id. at 236. Based on these four factors, the court concluded that "an insurer which sells insurance contracts to ERISA-regulated benefit plans is itself the sole and direct client of counsel retained by the insurer, not the mere representative of client-beneficiaries, and not a joint client with its beneficiaries." Id.

### 2. **Duty to Disclose**

The Wachtel court then addressed the "second rationale for applying the fiduciary exception — the fiduciary's duty of disclosure." Id. The court noted that successive versions of the Restatement of Trusts had recognized "the obligation of a trustee to disclose to beneficiaries the advice of counsel retained by the trust" and acknowledged that some courts "have used language broad enough to suggest that *every* ERISA fiduciary has an obligation to disclose counsel's statements to its beneficiaries." Id. Nevertheless, it concluded that "such broad language does not represent an intentional expansion of the fiduciary exception" and that ERISA "did not intend to expand the full panoply of trustees' obligations to every entity which might be designated a fiduciary under ERISA." Id. The court relied on an ERISA provision that exempts insurance companies from the obligation to hold assets in trust to support its determination that insurance companies are not the same as trustees under ERISA, and, therefore, cannot be said to have the same disclosure obligations that are imposed upon trustees under common law. See id. (citing 29 U.S.C. § 1103(b)(1)-(2)).[4] While the court clarified that it was not suggesting "that an insurer servicing an ERISA plan owes no disclosure obligations to plan beneficiaries[,]" it determined that "the disclosure obligations of an

---

[4] 29 U.S.C. § 1103(a) provides in relevant part that "[e]xcept as provided in subsection (b) of this section, all assets of an employee benefit plan shall be held in trust by one or more trustees." Subsection (b) provides in relevant part that "[t]he requirements of subsection (a) of this section shall not apply – (1) to any assets of a plan which consist of insurance contracts or policies issued by an insurance company qualified to do business in a State; (2) to any assets of such an insurance company or any assets of a plan which are held by such an insurance company ...." 29 U.S.C. § 1103(b)(1)-(2).

insurer-fiduciary cannot be defined through rote application of the common law of trusts." Id. at 237. Thus, the Wachtel court rejected the application of the fiduciary exception to insurers based on ERISA's broad disclosure requirements.

#### 3. Miscellaneous Factors

Finally, the court cited two additional factors in support of its decision to allow the insurer to rely on the attorney-client privilege. First, the court held, "the fiduciary obligations of insurers who contract with ERISA plans are not well-settled at law" and "[i]t would be impudent to craft an evidentiary privilege in such a way as to require the difficult task of defining fiduciary obligations to be met at the discovery stage." Id. Second, the court was concerned that "an expansive and uncertain attorney-client privilege for insurer-fiduciaries will cause insurers to reevaluate their relationships with ERISA plans." Id. The court was concerned that this may result in the decision of some insurers to stop providing insurance for benefit plans or raise premiums. Id. As the court recognized, however, these arguments have consistently been rejected by courts that have nevertheless applied the fiduciary exception to trustees, corporate managers and plan administrators. Id. Nevertheless, the Wachtel court concluded that these arguments are "thumbs on the scale and help to tip the balance." Id.

### D. Application of Wachtel to the Instant Case

#### 1. Duty to Disclose

For the reasons detailed herein, this court declines to apply the reasoning of Wachtel to the instant case. Addressing the Wachtel court's second principal argument first, this court is not persuaded that ERISA's provision exempting insurance companies from holding plan assets in trust signals that Congress intended to exempt insurers from the disclosure obligations established by ERISA. Notably, the Wachtel court pointed to nothing in the statute or in its implementing regulations relating to disclosure that would exempt insurance companies from any of ERISA's disclosure requirements or otherwise distinguishes between types of fiduciaries for purposes of disclosure. Thus, this court does not find a statutory basis to apply the fiduciary exemption to all ERISA fiduciaries except insurers.

Moreover, in light of the breadth of the disclosure obligations established by ERISA with respect to plan administration matters, this court agrees with those courts that have determined that the attorney-client privilege should not be used to narrow the scope of those obligations. Section 503 of ERISA provides in relevant part that "[i]n accordance with regulations of the Secretary [of Labor], every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The Department of Labor has promulgated regulations in order to implement the "full and fair review" requirement of ERISA. See DiGregorio v. Hartford Comprehensive Employee Benefit Serv. Co., 423 F.3d 6, 14 (1st Cir. 2005). Those regulations, as amended, "require that a plan's claim denial and review

procedures must, among other things, '[p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information *relevant* to the claimant's claim for benefits.'" Id. at 14 n.4 (quoting 29 C.F.R. § 2560.503-1(h)(2)(iii)) (alteration and emphasis in original). The regulations further define "relevant" information to include those materials "'relied upon in making the benefit determination,' as well as those 'submitted, considered, or generated in the course of making the benefit determination, without regard to whether [they were] relied upon in making the benefit determination.'" Id. (quoting 29 C.F.R. § 2560.503-1(m)(8)) (alteration in original; emphasis omitted). Thus, ERISA places a heavy duty on fiduciaries to provide information concerning plan administration to the beneficiaries.

The opportunity to review materials relevant to a claim determination "is critical to a full and fair review, for by that mechanism the claimant has access to the evidence upon which the decision-maker relied in denying the claim and thus the opportunity to challenge its accuracy and reliability." Id. at 14-15 (quoting Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 237 (4th Cir. 1997)). This goal would be frustrated if insurers were able to limit access to such information through a claim of attorney-client privilege.

**2. Identity of Client**

This court is also not persuaded by the Wachtel court's contention that the interests of the insurer and those of the plan beneficiaries are so divergent as to justify withholding attorney-client communications even though the insurer was acting in its