capacity as a fiduciary and the communications concern matters of plan administration. ERISA specifically mandates that fiduciaries discharge their duties with respect to benefits plans "in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan . . . ." 29 U.S.C. § 1104(a)(1). Under the statute, insurers administering a plan owe the same duty to the beneficiaries as do other ERISA fiduciaries. The fact that an insurance company is a for-profit enterprise does not alter its fundamental obligations under ERISA.

As detailed herein, an analysis of the four factors identified by the Wachtel court which led it to conclude that the plan beneficiaries are not the "real clients" when an insurer is the claim administrator does not lead to the same conclusion under First Circuit law.

For example, the first factor identified by the Wachtel court in support of its conclusion that the real clients are not the plan beneficiaries is that other ERISA fiduciaries are generally managing assets over which they are serving only as a trustee and lack ownership rights, while an insurer holds legal title to its assets even while engaging in fiduciary acts. However, all fiduciaries have an obligation to properly and appropriately manage the assets which are to be available for the plan beneficiaries. The fact that one set of fiduciaries may be managing assets held in trust, while others are managing their own assets, should not alter the relationship between the fiduciary and the plan beneficiaries.

The Third Circuit found it very significant that there is a "structural conflict of interest" which arises when the insurance company determines eligibility and then pays for the benefits from its own funds. Wachtel, 482 F.3d at 234-35. Because of this inherent conflict, the Third Circuit applies a heightened standard of review to claims decisions made by insurers. Id. at 235. In contrast to the Wachtel court, however, the First Circuit has determined that the structural conflict of interest that arises when an insurer is asked to award benefits out of its own funds "is not as serious as might appear at first blush." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998). The First Circuit has concluded that any such conflict is reduced by the desire of employers to please their employees and not to keep "an overly tight-fisted insurer." Id. Therefore, the significance that the Wachtel court placed on the inherent conflict of interest that insurers face when administering an ERISA plan is inconsistent with the law of this Circuit.

The third factor relied on by Wachtel, that an insurer may have a conflict arising out of handling multiple ERISA benefit plans or other non-ERISA customers, does not seem to this court to be grounds to distinguish an insurer's fiduciary obligations from those of other ERISA fiduciaries either. Non-insurer fiduciaries have obligations to multiple claimants as well, and must similarly be mindful of the duties owed to others who are to be paid from the same pool of assets. The fact that insurers may handle multiple plans, in addition to the claims of multiple beneficiaries within a single plan, is

not grounds for altering the administrator's fiduciary obligations vis-à-vis the beneficiaries.

The Wachtel court's final factor, that the insurer bore the cost of legal advice out of its own assets, has no application here. Unlike in Wachtel, where the insurer retained counsel, Jefferson Pilot sought advice concerning plan administration from its own in-house counsel. This suggests that Jefferson Pilot's counsel was acting in a fiduciary capacity at the time the advice was rendered. Moreover, there was no additional cost incurred by Jefferson Pilot in obtaining the legal advice: it was no different than the cost that it incurred by having its claims personnel administer the claim in their fiduciary capacity. Therefore, the identity of counsel does not mandate that the insurer's interest are so divergent from that of the plan beneficiaries as to negate the conclusion that the beneficiaries are the intended clients of the attorney-client consultations.

### 3. Miscellaneous Factors

Finally, the two miscellaneous factors which tipped the sales in the Wachtel court's opinion have been rejected by the multitude of courts addressing the fiduciary exception. This court also does not find the arguments persuasive. Knowing that the fiduciary exception will apply to an insurer's communications with counsel will give the insurer as much certainty as a holding to the contrary. In addition, there is nothing in the record before this court to indicate that the insurance company will run away from the business of providing coverage under ERISA plans because it must disclose information concerning how it reached benefit decisions.

In conclusion, this court finds that the fiduciary exception recognized by the majority of courts that have analyzed the fiduciary exception in the ERISA context should apply in the instant case. Privileged communications between the insurer and its in-house counsel should be protected to the extent they are not related to fiduciary matters, but must be disclosed where they concern matters of plan administration. This application of the fiduciary exception is most consistent with the disclosure requirements and fiduciary obligations established by ERISA, even where, as here, the fiduciary is an insurer.

## IV. ORDER

For all of the reasons detailed herein, the "Plaintiff's Motion to Compel Disclosure of Documents Withheld by Defendant Under Claim of Attorney Client Communication Privilege or Attorney Work Product" is ALLOWED, except for the first section of handwritten notes on document No. 12 which reflect settlement considerations and may be redacted.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge