```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - -
D & H THERAPY ASSOCIATES,       :
LLC, and ROBIN DOLAN,           :
        Plaintiffs,             :
                                :
    v.                          :    C.A. No. 08-05 S
                                :
BOSTON MUTUAL LIFE              :
INSURANCE COMPANY,              :
        Defendant.              :
- - - - - - - - - - - - - - - -
```

MEMORANDUM AND ORDER

WILLIAM E. SMITH, United States District Judge.

This matter is before the Court on the motions of both Plaintiffs and Defendant requesting that the Court reconsider its earlier order, entered on September 2, 2009, on the parties' cross motions for summary judgment.[1] This ERISA[2] lawsuit was filed on behalf of Plaintiff Robin Dolan, who, along with her former employer and co-plaintiff, D & H Therapy Associates, LLC ("D & H"), allege that Defendant Boston Mutual Life Insurance Company ("Boston Mutual") wrongfully terminated her long-term disability benefits. Boston Mutual's counterclaim demanded that Dolan reimburse it for benefits it alleges were mistakenly overpaid to Dolan. At the summary judgment phase of this dispute, Defendant moved for the dismissal of Plaintiffs' Complaint in its entirety, and for summary

---

[1] The Court's earlier decision may be found at D & H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co., 650 F. Supp. 2d 143 (D.R.I. 2009).

[2] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.

judgment in its favor on the counterclaim.  On their side, Plaintiffs urged the Court to assign liability to Boston Mutual on three counts of the five-count complaint, and to dismiss Defendant's counterclaim.  Following a hearing on these matters, as well as a complete review of the administrative record, the parties' additional evidentiary submissions and thorough briefing on the issues, this Court granted Defendant's motion for summary judgment, dismissing Plaintiffs' Complaint, at the same time denying Plaintiffs' partial motion for summary judgment as to liability on three counts in the Complaint.  The Court also denied Defendant's motion for summary judgment on its counterclaim.

Raising interesting and timely issues in this dynamic area of legal analysis, both sides have urged the Court to reconsider its rulings on the motions for summary judgment.  Defendant moves the Court to reconsider the ruling on the counterclaim, arguing that, as a matter of law, it is entitled to repayment of benefits improperly paid to Dolan.  Plaintiffs argue that the Court employed the wrong standard of review, and that the Court must reconsider its grant of summary judgment in Defendant's favor in light of an alternate standard.  The Court has reviewed both sides' motions and examined the up-to-date case law in these areas, and has decided, for reasons explained below, to confirm summary judgment in Defendant's favor on Plaintiffs' Complaint.  However, the Court has

reconsidered its ruling on the counterclaim, and now dismisses it entirely, as a matter of law.

I.  Plaintiffs' Motion for Reconsideration

In its original decision, the Court grappled with the Supreme Court's recent decisions concerning the proper standard of review to be accorded the discretionary decisions of ERISA plan administrators when the administrator is also the payor of plan benefits.  In Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008), the Supreme Court held that this dual role invariably created a conflict of interest, and "that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits."  128 S. Ct. at 2346.  However, the Supreme Court was clear that any intensified scrutiny of the plan administrator's decision-making process should stop short of a de novo review.  The Court underscored that the "abuse of discretion" standard of review it had previously set forth in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), remained the appropriate standard of review. 128 S. Ct. at 2351.

Just as this Court was issuing its opinion, the First Circuit handed down its first post-Glenn decision: Denmark v. Liberty Life Assurance Co. of Boston, 566 F.3d 1 (1st Cir. 2009).  In Denmark, the First Circuit conceded that its previously-articulated theory,

3

that market forces would offset the effects of any conflict of interest,[3] had been rejected by the Glenn Court. 566 F.3d at 7.

The First Circuit continued its analysis of Glenn:

> The Court then turned to the question of how best to weigh structural conflicts. In charting this course, it held fast to the standard of review previously announced in Firestone: abuse of discretion.
>
> . . . .
>
> The Court added that judges should weigh a conflict as they would weigh any other pertinent factor; that is, when the relevant considerations are in equipoise, any one factor, including a structural conflict, may act as a tiebreaker.

Id. at 8.

The Denmark Court concluded that, in future ERISA appeals, plan administrators "can be expected as a matter of course to document the procedures used to prevent or mitigate the effect of structural conflicts. That information will be included in the administrative record and, thus, will be available to a reviewing court." Id. at 10. Because this information had not been included in Denmark's administrative record, the First Circuit vacated the lower court's judgment in favor of the insurance company and remanded the case "for further consideration consistent with Glenn and with this opinion." Id. at 10.

Noting Denmark's remand and accompanying directives, Plaintiffs herein urge the Court to reconsider its earlier ruling,

---

[3] See, e.g., Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

and specifically to conduct an inquiry into the procedures employed by Boston Mutual to insulate its plan administrator "against the potentially pernicious effects of structural conflicts." Id. at 9.

The Court's original analysis of Plaintiffs' Complaint focused on a dispute between the parties over interpretation of Plan language.  In brief,[4] Plaintiffs alleged that Dolan's long term disability benefits were wrongfully terminated when Boston Mutual changed its method of calculating earnings to include partnership and shareholder distributions – a method which was at variance with the Plan's definition of "earnings."  Defendant responded that, because Plaintiffs were dilatory in providing it with requested financial documentation, it mistakenly continued to pay benefits to Dolan for a period of time during which her earnings exceeded the Plan's limits.  Defendant argued further that it did not change its interpretation of Plan language, but rather the overpayment was not discovered until an audit was performed.  D & H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co., 650 F. Supp. 2d 143, 152 (D.R.I. 2009).

Following a thorough examination of the Plan as a whole, this Court concluded that Boston Mutual's interpretation of the Plan language was not only reasonable, but also the most logical interpretation when the language was analyzed in context as part of

---

[4] For a more thorough description of the dispute and the pertinent Plan language, see this Court's earlier opinion at 650 F. Supp. 2d 143 (D.R.I. 2009).

5

the entire Plan. Plaintiffs' current remonstrances to the contrary, no amount of reconsideration could change the Court's legal conclusion as to the correctness of Defendant's interpretation of policy language. This is not a case where a plaintiff's medical expert asserts the plaintiff is disabled, and the insurance company's medical expert asserts he or she is actually fine. In that case, the Court would be well warned, in light of Glenn and Denmark, to look for the insurance company's thumb on the proverbial scale. Instead, this case presented the Court with an opportunity to analyze the language of a contract and to determine whether or not Defendant had interpreted that language reasonably, rather than arbitrarily, capriciously or in such a way as would indicate an abuse of its discretion on the part of the Plan Administrator.[5] The Court concluded Defendant's interpretation was not only reasonable, but the most logical interpretation, and the Court now stands by that determination. Consequently, Plaintiffs' Motion for Reconsideration is denied.

II. Defendant's Motion for Reconsideration

Defendant has moved the Court to reconsider the denial of summary judgment on its counterclaim. Defendant's counterclaim demands reimbursement of $163,661.57, representing long-term disability benefits it mistakenly overpaid to Robin Dolan prior to

---

[5] The First Circuit has recently reasserted its endorsement of this standard of review in Cusson v. Liberty Life Assurance Co. of Boston, 592 F.3d 215, 224 (1st Cir. 2010).

its determination that she was no longer eligible for benefits because her post-disability income exceeded 80% of her pre-disability income. Defendant brings its counterclaim pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), which allows a fund administrator to seek only "appropriate equitable relief."

In Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), the Supreme Court set forth the distinction between equitable restitution and restitution at law. In that case, Knudson was injured in a car accident, and her medical expenses were paid for by insurance company Great-West. The policy included a provision that Great-West had a first lien on any payment the insured recovered from a third party. Id. at 207. Knudson sued her alleged tortfeasors, and negotiated a settlement, which included allocations to create a Special Needs Trust for her ongoing care, and to reimburse Great-West a fraction of the total benefits it had paid out on her behalf. Id. at 208. Great-West tried unsuccessfully to intercede in the state court proceeding convened to approve the settlement, and the state court went on to instruct the tortfeasors to pay the settlement funds directly into the Special Needs Trust. Id. at 208. Great-West then filed a federal action to enforce the reimbursement provision of its policy. Id. at 208. The District Court granted summary judgment to Knudson, which ruling was affirmed by the Ninth Circuit. Id. at 209.

On appeal, in an opinion that the dissent complained "may seem to reek unduly of the study, if not of the museum," id. at 232 (internal citations omitted), the Supreme Court delved deeply into the historical definitions of equity.  Because the funds sought by Great-West were not in Knudson's possession, but had already been paid over to the Special Needs Trust, the Supreme Court determined that they were beyond the reach of Great-West's equitable claim. Id. at 214.

> The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable – the imposition of a constructive trust or equitable lien on particular property – but legal – the imposition of personal liability for the benefits that they conferred upon respondents.

Id. at 214 (emphasis in original).

The Supreme Court concluded that, in order to claim equitable restitution, the claimant must establish that "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."  Id. at 213.  If the property sought has been dissipated, no equitable lien may be established. Id. at 213. Equitable restitution may not impose personal liability on the defendant, but rather may only restore to the claimant particular property in the defendant's possession.  Id. at 214.

In light of the requirements set forth in <u>Knudson</u>, this Court denied Boston Mutual's motion for summary judgment on the counterclaim because Boston Mutual had made no prima facie showing that Dolan had the disputed benefits in her possession. <u>D & H Therapy</u>, 650 F. Supp. 2d at 160. In its motion for reconsideration, Defendant argues that the language of its ERISA plan creates an equitable lien which is enforceable according to a more recent Supreme Court case, <u>Sereboff v. Mid Atlantic Med. Servs., Inc.</u>, 547 U.S. 356 (2006), which addressed the <u>Knudson</u> opinion and refined its standard. The pertinent portion of the present ERISA Plan, Section 5, provides that Boston Mutual may recover overpayments. It reads:

> WHAT HAPPENS IF WE OVERPAY YOUR CLAIM?
>
> We have the right to recover overpayments due to:
> - fraud;
> - an error we make in processing your claim;
> - your receipt of other income amounts.
>
> If we determine that we overpaid your claim, then we require you repay us in full. We will determine the method by which you will repay us.

The <u>Sereboff</u> case relied on by Defendant is factually similar to <u>Knudson</u>. Plaintiffs were injured in a car accident, and their insurance company, Mid Atlantic, paid their medical bills pursuant to a policy which provided, <u>inter alia</u>, that Mid Atlantic would be reimbursed if the beneficiary recovered medical costs from a third party. As soon as the Sereboffs sued the third-party tortfeasor, Mid Atlantic asserted a lien on the anticipated proceeds. However,

when the Sereboffs settled their lawsuit, they made no payment to Mid Atlantic.  Mid Atlantic filed suit against the Sereboffs, and sought a preliminary injunction requiring them to set aside a portion of their tort settlement.  The parties stipulated that an amount of the tort settlement equal to the medical benefits previously paid by Mid Atlantic would be set aside in a separate fund while the litigation ensued.  Ultimately, the District Court found in favor of Mid Atlantic and ordered the Sereboffs to reimburse it for the medical benefits from the set-aside funds. 547 U.S. at 360.

The ruling was affirmed by the Fourth Circuit, and by the Supreme Court.  Discussing its ruling in Knudson, the Supreme Court noted three factual distinctions between the two cases, and stated that the "impediment to characterizing the relief in Knudson as equitable is not present here."  Id. at 362.  First, Mid Atlantic sought to recover "specifically identifiable funds."  Id. at 362-363.  Second, those funds were "within the possession and control of the Sereboffs – that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan, set aside and preserved [in the Sereboffs'] investment accounts."  Id. at 363.  And, finally, the claimed funds were "not from the Sereboffs' assets generally, as would be the case with a contract action at law." Id. at 363.

10

Since 2006 the narrow pathway separating <u>Knudson</u> and <u>Sereboff</u> has been heavily trafficked by ERISA litigants and courts alike, as both try to navigate the fine distinctions between equitable restitution and restitution at law.  Defendant herein directs the Court's attention to a series of cases where courts have found that Plan provisions create an equitable lien that is enforceable under ERISA, 29 U.S.C. § 1132.  However, as the Court was busy poring over these cases from across the nation, the First Circuit issued its first post-<u>Sereboff</u> case, <u>Cusson v. Liberty Life Assurance Co. of Boston</u>, 592 F.3d 215 (1st Cir. 2010).

Cusson appealed from the District Court of Massachusetts' unpublished decision[6] to grant summary judgment for her insurance company ("Liberty Life") after she objected to its termination of her long-term disability benefits.  The District Court also granted summary judgment to Liberty Life on its counterclaim seeking reimbursement from Cusson for overpayments it made as a result of her receipt of Social Security disability ("SSDI") benefits.  The First Circuit affirmed both rulings.

Cusson began to receive long term disability benefits in April 2002, while she was undergoing chemotherapy treatments for breast cancer.  Her chemotherapy ended in October of 2002, but she continued to feel poorly.  In February 2003, she was diagnosed with

---

[6] <u>Cusson v. Liberty Life Assurance Co. of Boston</u>, Civil Action No. 05-12455-GAO, 2008 WL 4457862 (D. Mass. Sept. 30, 2008).

11

fibromyalgia. As Cusson was evaluated and reevaluated, Liberty Life continued to pay disability benefits for several years. In May 2004, Liberty Life urged Cusson to apply for SSDI and, later that year, threatened to reduce her benefits unless she provided proof that she had applied for the government benefits. In December 2004, Liberty Life terminated Cusson's benefits, in part because video surveillance indicated that she was more active than she had reported.

In January 2006, Cusson was awarded SSDI, with a retroactive disability date of March 15, 2002. In its counterclaim, Liberty Life sought reimbursement for the portion of disability benefits it paid to Cusson for the approximately 33-month period between the SSDI retroactive award date and the date Liberty Life terminated its benefits. The District Court permitted the counterclaim, stating that it was an equitable claim and analogizing the facts with Sereboff, while distinguishing them from Knudson. 592 F.3d at 230. The First Circuit concurred:

> Here, like in Sereboff, the LTD Plan targets specific funds for recovery – Cusson's LTD payments – and identifies the specific portion to which Liberty is entitled – the amount of the overpayment while Cusson was receiving benefits under the LTD Plan. We are persuaded by the Eighth Circuit's holding in a similar case that a claim such as this is a claim for equitable relief. See Dillard's Inc. v. Liberty Life Assurance Co., 456 F.3d 894, 901 (8th Cir. 2006) (finding that Liberty's claim was equitable when it sought "a particular share of a specifically identified fund – all overpayments resulting from the payment of social security benefits"). Moreover, unlike in Knudson, the SSDI benefit was paid to

> Cusson rather than into a separate trust over which she has no control.

592 F.3d at 231. The Court went on to point out that Cusson was put "on notice" by Liberty Life's Plan language that she would have to reimburse it for amounts she received from Social Security. Id.

In the case before this Court, Boston Mutual argues that its Plan language likewise put Dolan on notice that she might have to repay any overpayments made by Boston Mutual, even those resulting from its own mistake. While it is undeniable that Boston Mutual's policy asserted the right to collect overpayments, this language is insufficient on its own to create an equitable claim. What is most strikingly absent in the present case, when compared to Sereboff and Cusson, is any payment to Dolan from a third party, such as a tortfeasor or the Social Security Administration. Of the ten cases cited by Boston Mutual in its memorandum in support of its Motion for Reconsideration, nine involved private insurance beneficiaries who were also receiving social security payments, and the tenth concerned a doctor who received duplicative disability benefits from two different insurance companies.[7]

---

[7] Defendant cites Gutta v. Standard Select Trust Ins. Plans, 530 F.3d 614 (7th Cir. 2008); Gilchrest v. Unum Life Ins. Co. of Am., 255 Fed. Appx. 38 (6th Cir. 2007); Dillard's Inc. v. Liberty Life Assurance Co. of Boston, 456 F.3d 894 (8th Cir. 2006); Holmstrom v. Metro. Life Ins. Co., 615 F. Supp. 2d 722 (N.D. Ill. 2009); Walsh v. Metro. Life Ins. Co., No. 3:06-1099, 2009 WL 603003 (M.D. Tenn. Mar. 9, 2009); GE Group Life Assurance Co. v. Turner, Civil Action No. 3:05-342, 2009 WL 150944 (W.D. Pa. Jan. 20, 2009); Bowling v. PBG Long-Term Disability Plan, 584 F. Supp. 2d 797 (D. Md. 2008); Cusson v. Liberty Life, 2008 WL 4457862; Helmuth v.

13

These third-party payments provide a wind-fall for the beneficiary, who is essentially "double-dipping" when he or she receives payments from the third-party and from the insurance company for the same injury for a concurrent period of time. In contrast, Dolan received only disability benefits from Boston Mutual – benefits that were intended to replace her lost wages. While courts since <u>Sereboff</u> may have retracted from the traditional requirement that the equitable claimant prove that the funds are not dissipated, in Dolan's case, the fact that the benefits were designed, by definition, to replace her wages during a period when she was unable to work, creates an extremely strong presumption that this money was long ago spent on groceries, rent and the electric bill.

Boston Mutual's counterclaim, that Dolan repay benefits it mistakenly paid her for a period of time that began eight years ago, does not sufficiently meet the criteria outlined in <u>Sereboff</u>; that is, the counterclaim does not seek: 1) a specifically identifiable fund; 2) within Dolan's possession and control; and 3) and which is not part of Dolan's general assets. <u>Sereboff</u>, 547 U.S. at 363. Because Boston Mutual's counterclaim instead seeks "to impose personal liability . . . for a contractual obligation to pay money," <u>id.</u> at 363 (quoting <u>Knudson</u>, 534 U.S. at 210), the

---

<u>Hartford Life & Accident Ins. Co.</u>, No. 5:08-CV-983, 2008 WL 3200631 (M.D. Ohio Aug. 6, 2008); and <u>Mattox v. Life Ins. Co. of N. Am.</u>, 536 F. Supp. 2d 1307 (N.D. Ga. 2008).

14

counterclaim must be characterized as a legal claim for restitution. Consequently, as a matter of law, Boston Mutual's counterclaim is preempted by ERISA, and must be dismissed.

III. Conclusion

For the reasons explained above, the Court reaffirms its grant of summary judgment in Defendant's favor on all counts of Plaintiffs' Complaint, as well as its order denying Plaintiffs' partial motion for summary judgment on liability only on three counts of the Complaint. However, in reconsidering its earlier ruling, the Court has determined that it must grant Plaintiffs' motion for summary judgment on Defendant's counterclaim, which claim must be dismissed as a matter of law. The Clerk shall enter judgment accordingly.

It is so ordered.


*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: March 8, 2010

15